OPINION
{¶ 1} Defendant-appellant William Hammond [hereinafter appellant] appeals from his conviction and sentence as well as a Judgment Entry which denied appellant's motion to suppress, in the Stark County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In September, 2003, Detective Pamela Denczak Henderhan of the Jackson Township Police Department and Detective Kim Elliott of the Canton Police Department were assigned to the F.B.I Fugitive Violent Crimes Task Force. From September 6 through September 8, the Task Force received information from an FBI agent that large quantities of marijuana were being delivered to Stark County for distribution by two or three males in a large white panel van or truck or a U-haul truck. According to the FBI agent, the suspects, who came from Las Vegas, would stay at the Belden Village Motel 6 and would come to Stark County every seven to ten days. The FBI agent advised the Task Force to ask local motels to notify The Task Force of any suspicious activities. The Task Force agreed and provided the following indicators of suspicious activity to the motels and hotels in the area: local people paying cash on a day-by-day basis for a room, people coming from certain states (Texas, Nevada, California, and Arizona), the use of rental vehicles, lying to the clerk about license plates, using a fake identification, significant foot traffic in and out of the motel and no requests for room service or housekeeping. The motel and hotel personnel agreed to cooperate.
 {¶ 3} On September 8, 2003, the clerk from the Belden Village Motel 6 called the Task Force and stated that there was a white male, "William Andress," and a female who had checked into room 220, paid cash for the room, were driving a white Buick automobile with rental Colorado license plates and stated that they were from Las Vegas.
 {¶ 4} Detectives Henderhan and Elliott, as well as other members of the Task Force, arrived at the Motel 6 and set up surveillance. The detectives observed a man, later identified as Gerald Bowerman, leaving in the white Buick but officers lost him in traffic. Later, the white Buick returned to the motel.
 {¶ 5} On Wednesday, September 10, the same clerk again contacted the Task Force and stated that a white recreational vehicle [hereinafter RV] with California license plates was at room 220 of the Motel 6. According to the clerk, a male in his 50's was visiting room 220 but did not check in at the Motel. Detectives Henderhan and Elliott again responded to the area and conducted surveillance of the room. The detectives saw Bowerman and the woman repeatedly come out of Room 220, one at a time. Each would look around suspiciously and then go back inside the room. On one occasion, appellant walked out of the room and walked to the RV. Appellant opened the storage areas underneath the RV and did "something" underneath the RV.[1] Eventually, Bowerman, appellant and the woman left the motel in the white Buick. They returned after about an hour and parked near the RV. The woman exited the car and went back into room 220, looking around as she went. The car then backed up to the rear of the RV. Bowerman carried a very large and heavy looking duffel bag from the bottom locked storage area of the RV. Bowerman struggled with it as he carried it to the Buick. Bowerman placed the duffel bag in the Buick. Another bag was placed in the Buick. Both appellant and Bowerman looked around the area suspiciously as the bags were transferred. After transferring the bags, the two men got into the white Buick and drove away.
 {¶ 6} Henderhan and Elliott followed the Buick in separate vehicles. Upon leaving the motel, the Buick proceeded on Portage Road where the traffic was heavy. Suddenly, the car turned onto another road, making a quick maneuver to turn and without signaling. This maneuver made Henderhan believe that the men had recognized her vehicle as the one that had done surveillance and as a possible police car. Henderhan immediately called for a marked cruiser, which eventually stopped the Buick. A large amount of marijuana was found in the duffel bags.
 {¶ 7} The Stark County Grand Jury indicted appellant and Bowerman, charging each with one count of trafficking in marijuana. Appellant filed a motion to suppress the evidence seized as a result of the traffic stop of the vehicle. They claimed that the police did not have probable cause to stop the car and, therefore, the seizure of the marijuana was illegal.
 {¶ 8} An evidentiary hearing was conducted on the motion to suppress. The two detectives testified. After the presentation of the evidence, the trial court overruled the motion. The trial court concluded that the officers had probable cause and reasonable suspicion to make the traffic stop of the white Buick once it left the parking lot. According to the trial court, the evidence could have been destroyed and the illegal activity completed had the officers taken the time to obtain a search warrant.
 {¶ 9} The co-defendants were tried separately . Appellant's trial proceeded first and the jury found appellant guilty of the charged offense. In addition, the jury made a specific finding that the amount of marijuana involved exceeded 20,000 grams. The trial court proceeded to sentence appellant to a mandatory prison term of eight years.
 {¶ 10} It is from this conviction and sentence as well as the Judgment Entry which overruled the motion to suppress that appellant appeals, raising the following assignment of error:
 {¶ 11} "The trial court erred in denying appellant's motion to suppress."
 {¶ 12} In the sole assignment of error, appellant contends that the trial court erred when it denied appellant's motion to suppress. Specifically, appellant contends that there were no reasonable, articulable facts upon which to base an investigatory stop. We disagree.
 {¶ 13} There are three methods of challenging on appeal a trial courts ruling on a motion to suppress. First, an appellant may challenge the trial courts findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning
(1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141, State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See: State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93,96, 641 N.E.2d 1172, State v. Claytor (1993), 85 Ohio App.3d 623,627, 620 N.E.2d 906, 908, and State v. Guysinger (1993),86 Ohio App.3d 592, 594, 621 N.E.2d 726. In this case, appellant contends that the trial court incorrectly decided the ultimate issue.
 {¶ 14} An investigatory stop is permissible if a law enforcement officer has a reasonable suspicion, based on specific and articulable facts, that the individual to be stopped may be involved in criminal activity. Terry v. Ohio (1968), 392 U.S. 1, 21-22, 88 S.Ct. 1868,20 L.Ed.2d 889. When determining whether or not an investigative traffic stop is supported by a reasonable, articulable suspicion of criminal activity, the stop must be viewed in light of the totality of circumstances surrounding the stop. State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus, cert. denied (1988), 488 U.S. 910, 109 S.Ct. 264, 102 L.Ed.2d 252.
 {¶ 15} Appellant's arrest was the culmination of a series of events which began when the FBI provided a tip. The courts have recognized three categories of informants: (1) citizen informants; (2) known informants, i.e., those from the criminal world who have previously provided reliable tips; and (3) anonymous informants, who are comparatively unreliable.Maumee v. Weisner, 87 Ohio St.3d 295, 300, 1999-Ohio-68, 720 N.E.2d 507. A tip from a less reliable informant can provide a sufficient basis for aTerry stop if the tip can be corroborated by independent police investigation. Alabama v. White (1990), 496 U.S. 325, 329, 110 S.Ct. 2412,110 L.Ed.2d 301.
 {¶ 16} In this case, although it was determined that the tip was provided by the FBI, the record reveals no information about the circumstances surrounding the tip nor the ultimate source of the tip. Accordingly, in the case sub judice, we must determine whether the independent police investigation, in conjunction with the FBI tip, provided a sufficient basis for the stop of appellant. Upon review, we find that there was a sufficient basis to stop appellant's vehicle.
 {¶ 17} First, the detectives involved had a tip provided by an FBI agent which was somewhat detailed and specific about the trafficking of marijuana in the area. Second, the detectives corroborated the tip through independent investigation. A man and a woman from Las Vegas checked into room 220 at a Motel 6, paying cash for the room. The detectives observed Bowerman while at room 220 of the Belden Village Motel 6 on two occasions. Bowerman drove a white rental car, with Colorado license plates. Subsequently, a white RV with California plates was seen parked outside room 220. At the same time, a male visited room 220 without checking in. Ultimately, after further surveillance, the detectives observed appellant and Bowerman park the white Buick near the white RV. Then, while looking around suspiciously, appellant and Bowerman moved two duffel bags from the RV to the rental car. Upon following the rental car containing the duffel bags, the driver of the Buick acted as if he recognized one of the detectives' vehicles as a police car and took steps to lose the detective.
 {¶ 18} Based on the observations made by the detectives in their independent police investigation, we find that there was reasonable, articulable suspicion to stop appellant's vehicle.
 {¶ 19} Appellant's sole assignment of error is overruled.
 {¶ 20} The judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J. Hoffman, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] The detective who observed appellant in the storage areas was apparently not sure what exactly appellant was doing after he opened the storage areas.