OPINION *Page 2 
{¶ 1} Defendant-appellant Aaron Jones appeals after being convicted of aggravated burglary and aggravated robbery by a jury in the Mahoning County Common Pleas Court. He sets forth multiple allegations of ineffective assistance of counsel. He also raises issues concerning sufficiency of the evidence, weight of the evidence, speedy trial, sentencing and failure to issue curative instructions after sustaining defense objections. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} On January 12, 2006, Felicia Rodriguez reported that appellant, her former boyfriend, broke into her house with his cousin while she was sleeping and threatened her with a gun while she lay in bed. She stated that appellant repeatedly punched her in the face as he held her by the hair and that his cousin stole money and kicked her. Ms. Rodriguez called 911 repeatedly, and when police were slow to respond, she requested an ambulance, which transported her to the emergency room. Her nose was bleeding, her eyes and lips were swollen and she had contusions on her face and back. She provided a statement to police at the hospital and again the next day.
 {¶ 3} Appellant was arrested on January 19, 2006 for aggravated burglary. He remained in jail in lieu of bail. On January 30, 2006, a preliminary hearing was held, and appellant was bound over to the grand jury. On February 23, 2006, the grand jury indicted appellant on four counts. The first two were alternative forms of aggravated burglary, one for physical harm and one for having a deadly weapon. See R.C.2911.11(A). Count three was for aggravated robbery. See R.C.2911.01(A)(1). The final count was for felonious assault, but this charge was not brought to trial. See R.C. 2903.11(A)(2).
 {¶ 4} Although represented by appointed counsel since the beginning, appellant filed various pro se motions. A pro se motion for new counsel was granted. However, a pro se motion to dismiss on speedy trial grounds was denied. Thereafter, the jury trial commenced on May 22, 2006.
 {¶ 5} The victim testified for the state. She noted that she had locked the door before she went to bed at 7:00 p.m. but that she discovered the door unlocked after *Page 3 
the incident. She explained that appellant still had her key from when they dated and that he had ignored her requests to give it back since they stopped dating the prior summer. (Tr. 208, 231-232).
 {¶ 6} The victim then described waking up with the lights on and feeling a gun pressed against her head. (Tr. 211). She said appellant threatened that he would shoot her if she called the police or her fiancé. (Tr. 213). She then disclosed that appellant began punching her in the face as he held her by the hair. (Tr. 214-216).
 {¶ 7} In the meantime, appellant's cousin knocked things down as he searched the room. He took $800 from a box by her bed and her prescription Vicodin pills. He then kicked the victim in the back as she was struggling with appellant. (Tr. 217).
 {¶ 8} The victim estimated the incident took place at 9:00 or 9:30 p.m. and lasted approximately twenty minutes. However, she had been asleep, and there were no clocks in her bedroom. (Tr. 221). She noted that she called 911 repeatedly, waiting over fifteen minutes between the first and second calls. (Tr. 220-221). She believed that she called her fiancé at work around 10:00 and that he arrived home at 10:30 p.m., just prior to the ambulance arriving. (Tr. 221).
 {¶ 9} The state also called the first responding officer and the emergency room physician to the stand. They testified to the victim's injuries and opined that it appeared she had been beaten. Hospital records established that the victim checked-in just before 11:00 p.m. (Tr. 283).
 {¶ 10} The defense called Takisha Watson, appellant's girlfriend, as an alibi witness. It was pointed out that she had been dating appellant for three years and that he had dated the victim for a year and a half of that time unbeknownst to Ms. Watson. Ms. Watson testified that on January 12, 2006, she picked appellant up from work at 5:00 p.m. and went to Northside Hospital with him to see his grandmother. She said that they left when visiting hours were over at 8:30 or 9:00 p.m. (Tr. 301). She explained that her car would not start so they had to use the security guard's battery charger. (Tr. 302). Ms. Watson testified that they then went to her house on the south side of Youngstown. She stated that her brother called appellant at 9:30 or 10:00 p.m.; he asked for a ride, but the car would not start. She concluded that she and appellant went to bed between 11:00 and 11:30 p.m. (Tr. 303). *Page 4 
 {¶ 11} This witness's brother was also called as an alibi witness since he stated that he called his sister's house at 9:30 or 10:00 p.m. and spoke to appellant for about an hour. (Tr. 323). Appellant testified in his own defense and confirmed the testimony of the alibi witnesses, stating he left the hospital building at 8:45 p.m., got a jump start, went home, ate, and talked on the telephone to Ms. Watson from 9:30 p.m. until 10:15 or 10:30 p.m. (Tr. 349-351). He also claimed that he left the victim's house key on her table on the day they ended their relationship. (Tr. 367).
 {¶ 12} The jury found appellant guilty of aggravated robbery and one count of aggravated burglary. (The jury had been instructed that they could only find appellant guilty of one of the two counts of aggravated burglary.) On July 20, 2006, appellant's sentencing hearing was held. In a July 24, 2006 judgment entry, the court sentenced appellant to the maximum of ten years on each count to run consecutively.
 {¶ 13} Appellant filed timely notice of appeal. On March 21, 2007, he was given final leave to file a brief by April 13, 2007. His counsel filed a brief on May 14, 2007, which this court permitted to be filed instanter. Appellant then filed a pro se brief on May 18, 2007, for which he never sought or received leave to file.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 14} Appellant sets forth six assignments of error, the first of which provides:
 {¶ 15} "DEFENDANT-APPELLANT AARON JONES WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL [citations omitted]."
 {¶ 16} In order to prevail on a claim of ineffective assistance of counsel, the defendant has the burden to establish two things: (1) that counsel's performance was deficient, and (2) that counsel's deficiency prejudiced the defense. State v. Reynolds (1998), 80 Ohio St.3d 670,674, citing Strickland v. Washington (1984), 466 U.S. 668, 687. Counsel's performance is deficient if it falls below an objective standard of reasonableness. Id.
 {¶ 17} Thus, the defendant must produce evidence that counsel acted unreasonably by substantially violating essential duties owed to the client. State v. Sallie (1998), 81 Ohio St.3d 673, 674. Because attorneys are presumed competent, reviewing courts must begin with the general premise that counsel's performance falls within a wide range of reasonable legal assistance and refrain from second-guessing strategical, tactical decisions. State v. Carter (1995),72 Ohio St.3d 545, 558. See, *Page 5 
also, State v. Burley (Aug. 11, 1998), 7th Dist. No. 93CA204 (a defendant is not guaranteed the right to the best or most brilliant counsel).
 {¶ 18} Upon demonstrating counsel's deficient performance, the defendant then has the burden to establish prejudice to the defense as a result of counsel's deficiency. Reynolds, 80 Ohio St.3d at 674. The reviewing court looks at the totality of the evidence and decides if there exists a reasonable probability that, were it not for serious errors made, the outcome of the trial would have been different.Strickland, 466 U.S. at 695-696. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
 {¶ 19} Appellant sets forth at least fifteen allegations that counsel rendered ineffective assistance. Initially, we must point out that the first two allegations are adequately argued, but the remaining thirteen allegations are merely listed in phrases and lack citations or arguments.
 {¶ 20} First, he states that his original appointed counsel failed to present the testimony of alibi witness, Takisha Watson, at the January 30, 2006 preliminary hearing. There is no suggestion that this would have changed the result of the court finding probable cause at that hearing. Rather, the complaint of prejudice is that her failure to testify at the preliminary hearing was used by the state at trial to attack her credibility at the later trial. That is, the state questioned Ms. Watson as to why she failed to report that she was an alibi witness to police or to testify at the preliminary hearing. She responded that she was present at the preliminary hearing and left the courtroom upon the order of separation of witnesses. She could not say why she was not called to testify.
 {¶ 21} Failing to have alibi witnesses testify at the preliminary hearing may be a valid trial tactic. For instance, the defense may not have wished the state to have the name of their alibi witness that far in advance of trial. In fact, the notice of alibi was not filed in this case until May 11, 2006 for a May 22, 2006 trial. It could have been determined that if the state had more notice, they may have been able to find witnesses who saw Ms. Watson elsewhere. It is also possible the state could have assembled telephone records to dispute the claim that appellant was speaking on a land line for an hour at the time of the incident. A debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. State v.Cook (1992), 65 Ohio St.3d 516, 524-525. *Page 6 
 {¶ 22} Second, appellant contends that his first counsel failed to keep him informed of the case status. In particular, he states that he asked counsel to provide him with discovery, but counsel failed to do so. He explains that this is the reason he was forced to file his pro se motion for discovery. He thus blames counsel for this pro se motion's tolling of speedy trial time as discussed infra under assignment of error number five.
 {¶ 23} Appellant fails to recognize the significance of the fact that he did not file his pro se motion for discovery until after new counsel had been appointed. This new counsel had not yet sought or received discovery as he had just been appointed. Thus, appellant was not in fact forced to file the motion. Rather, he could have waited until his newly appointed counsel received and supplied him with the requested material.
 {¶ 24} Additionally, whether appellant repeatedly asked prior counsel to view the discovery material and whether prior counsel refused this request are facts outside the record. As the state points out, it is well-established that if demonstrating ineffective assistance of counsel requires proof outside the record, then such claim is not properly raised in a direct appeal. See State v. Alicea, 7th Dist. No. 99CA36, 2002-Ohio-6907, at ¶ 35 (citing various Supreme Court cases).
 {¶ 25} Finally, appellant's pro se discovery motion did not prejudice his speedy trial time because his new counsel filed a discovery request two days after the pro se request, which tolled the time anyway. As can be seen under the fifth assignment of error, his speedy trial time was not close to expiring. For all of these reasons, appellant's second argument is without merit.
 {¶ 26} Third, appellant claims that counsel failed to fully investigate the criminal background of the victim. He claims that she had active warrants for drug trafficking in New York and that this fact could have been used to impeach her and to connect her $800 to allegedly stolen drug money. Among other problems, this argument is based upon facts outside the record, and thus, it is not the proper subject for direct appeal. Alicea, 7th Dist. No. 99CA36 at ¶ 35.
 {¶ 27} Fourth, appellant contends that counsel should have called more alibi witnesses because there were at least ten other people who could have corroborated that he was at the hospital just prior to the assault. We first note that prior to the assault does not necessarily provide an alibi during the assault. Still, it could help *Page 7 
corroborate parts of the alibi. Regardless, this argument is also disposed of by pointing out that it is based upon facts outside the record. Id.
 {¶ 28} Fifth, appellant complains that counsel failed to secure the video surveillance tape from Northside Hospital's parking lot to confirm part of his alibi immediately before the assault. This argument presumes that there is video surveillance, assumes that any such surveillance is recorded and maintained, and supposes that any footage would confirm appellant's story. Once again, this argument is based upon facts not in the record and thus is not the proper topic for direct appeal. Id.
 {¶ 29} Sixth, appellant states that counsel failed to speak with neighbors whom the victim allegedly told that her current boyfriend was the perpetrator of the assault. Seventh, appellant claims that counsel failed to depose an alibi witness under Crim.R. 15 before he moved from Ohio. Eighth, appellant alleges that the victim made a series of 911 calls in the days preceding January 12 with claims of identical injuries and thus counsel should have subpoenaed the 911 audiotapes. All of these claims are based upon facts not in the record. As such, we cannot address them at this time.
 {¶ 30} Ninth, appellant claims that his second counsel was ineffective by failing to subpoena his first counsel regarding when he was originally contacted by Ms. Watson. Deficiency is not apparent as counsel was unaware that this would become an issue until the state's cross-examination of Ms. Watson near the end of trial. Furthermore, we cannot presume prejudice as first counsel may have ended up testifying that Ms. Watson did not agree to testify as an alibi witness until after the preliminary hearing.
 {¶ 31} Tenth, appellant complains that counsel failed to insist on recorded sidebars in order to preserve certain appellate issues. However, appellant fails to cite to the parts of the record that these alleged errors occurred and fails to describe the topics of the discussions. As such, his brief fails to sufficiently support his argument for purposes of appeal. App.R. 12(A)(2); 16(A)(7). For a more detailed analysis of these rules, we point to our analysis under assignment of error number four where appellant makes a similar incomplete argument. We do note that he cites us to six pages of the transcript in his reply brief when he should have done so in his original brief. A reply brief is not the proper place to raise arguments for the first time as *Page 8 
appellee has no opportunity to address these newly raised arguments. SeeState v. Kapsouris, 7th Dist. No. 06MA47, 2006-Ohio-7056, ¶ 15.
 {¶ 32} In any event, the examples of sidebars reviewed by this court do not establish deficient performance or prejudice on the record. (Tr. 247, 288, 315, 371, 384, 396, 402). As a matter of fact, the Supreme Court recently held that a defendant did not show prejudice in a case with 130 unrecorded sidebar conferences because there was no evidence about what happened during those sidebars. State v. Drummond,111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 220 citing State v. Tyler (1990),50 Ohio St.3d 24, 38. This was a reiteration of its prior holding that "[a]cts of omissions by trial counsel which cannot be shown to have been prejudicial may not be characterized as ineffective assistance." Id., quoting State v. Davie (1997), 80 Ohio St.3d 311, 332.
 {¶ 33} Eleventh, appellant states that counsel failed to object to inadmissible evidence. Once again, he fails to point out where these failures occurred on the record, what evidence was inadmissible or why it was inadmissible. In his reply brief, he adds citations to four pages of the transcript. Still, he does not explain what evidence was inadmissible or why it was allegedly so. In any case, in reviewing what we believe to be some of his complaints, we note that rebuttal evidenceon redirect to show the victim did in fact give prior consistent statements is not per se inadmissible. (Tr. 255, 257). Additionally, we discern no facial error in showing an officer a copy of his report to refresh his recollection on the time of his dispatch. (Tr. 264). As for the final page cite, appellant is likely complaining about an officer's statement that the hospital staff indicated Ms. Rodriguez had been the victim of a crime. (Tr. 268). This is not prejudicial hearsay as it is cumulative. Moreover, counsel began objecting to this; however, he withdrew his objection for strategic reasons that he expressed on the record; he wanted "to get the same thing in anyways." (Tr. 268).
 {¶ 34} Twelfth, appellant complains that counsel failed to request a curative instruction on sustained objections. First, we cite to assignment of error number four where appellant contends that the court erred in failing to issue a curative instruction on sustained objections. As stated therein, appellant has failed to cite this court to the instances in the record where these errors allegedly took place. Thus, he failed to properly set forth the matter for our review. Moreover, in reviewing the issue under that assignment, prejudice is found to be lacking. As we further pointed out infra, trial *Page 9 
counsel can strategically refuse to request such instructions so as not to draw further attention to the matter and/or in cases where the objection was not regarding a major problem. Here, such trial tactic is not grounds for a finding of deficiency.
 {¶ 35} Thirteenth, appellant alleges that counsel failed to move for a mistrial at the appropriate time. However, appellant does not point out when the appropriate time would have been or on what grounds. Consequently, we cannot review the matter. Further, from our review of the record, grounds for a mistrial are not apparent.
 {¶ 36} Fourteenth, appellant states that counsel should have objected to prejudicial prosecutorial statements at trial and especially at closing. Once again, appellant fails to cite us to the pages of the transcript where these alleged errors occurred or what the statements contained. Thus, we cannot review the matter.
 {¶ 37} Appellant's pro se brief references prejudice in the prosecutor's question to a witness who claimed self-incrimination. Still, there is no cite to the transcript. In fact, he does not even state which witness supposedly claimed self-incrimination.
 {¶ 38} In his reply brief, he finally does cite us to eight pages in the transcript. As aforementioned, the reply brief is not the proper place for citing to the proper pages in the record. Moreover, listing of page numbers does not provide us with specific allegations of misconduct, the grounds for the appellate arguments or the law relevant to each allegation.
 {¶ 39} In any case, after reviewing the pages cited in the reply brief, we cannot find prosecutorial misconduct. Some of the pages cited reflect complaints addressed elsewhere. Two of the pages cited reflect withdrawn objections implying a tactical decision to refrain from pressing the point. There are no easily discernible problems on the remaining four pages cited in the reply brief. We also note that if these pages were the reason appellant argued above that a mistrial should have been granted, the argument is without merit.
 {¶ 40} Finally, appellant contends that counsel was ineffective for failing to present an argument regarding allied offenses of similar import at sentencing. This argument is without merit and is more fully discussed within assignment of error number six. For all of the foregoing reasons, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 41} Appellant's second assignment of error alleges: *Page 10 
 {¶ 42} "THE STATE OF OHIO FAILED TO INTRODUCE SUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT-APPELLANT AARON JONES COMMITTED AGGRAVATED BURGLARY OR AGGRAVATED ROBBERY THEREBY VIOLATING HIS DUE PROCESS RIGHTS [citations omitted]."
 {¶ 43} Sufficiency of the evidence is a question of law that deals with adequacy rather than weight of the evidence. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. In viewing a sufficiency of the evidence argument, a conviction will not be reversed unless the reviewing court holds that after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found that the elements of the offense were proven beyond a reasonable doubt.State v. Goff (1998), 82 Ohio St.3d 123, 138.
 {¶ 44} Appellant was convicted of aggravated robbery and aggravated burglary. See R.C. 2911.01(A); 2911.11(A). The only element contested on appeal is his identity as the perpetrator. As to this element, the victim testified that she was positive that appellant was the perpetrator. (Tr. 206, 236). She had dated appellant for over a year, and their relationship had just ended six months prior to the incident. (Tr. 207, 239). The light was on during the incident, which may have lasted for twenty minutes, and he spoke to her before beating her. (Tr. 211, 213, 221). This is sufficient evidence of appellant's identity. That is, viewing the evidence in the light most favorable to the state, some reasonable person could find that appellant was the perpetrator.
 {¶ 45} Contrary to appellant's suggestion, a victim's testimony need not be corroborated unless so required by a statute or rule. SeeState v. Economo (1996), 76 Ohio St.3d 56, 58. See, also, State v.Hannah (1978), 54 Ohio St.2d 84, 90-91. For instance, sexual imposition statutorily requires corroboration of the victim's testimony. R.C.2907.06(B). Even then, the corroboration need not be on the elements but need only tend to support the victim. Economo, 76 Ohio St.3d at 59-60. Here, there would be such corroboration in the form of proven injuries. Regardless, as aforestated, corroboration of the victim's testimony is unnecessary.
 {¶ 46} Finally, appellant indicates that the uncorroborated identification testimony is insufficient since it is contradicted by alibi witnesses. However, the fact that he had an alibi does not mean that the state's evidence is insufficient. Rather, a *Page 11 
reasonable person could disbelieve the alibi in its entirety or partially. See Hannah, 54 Ohio St.3d at 90-91, citing State v.DeHass (1967), 10 Ohio St.2d 230. This leads to the discussion of weight of the evidence discussed in appellant's next assignment of error.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 47} Appellant's third assignment of error contends:
 {¶ 48} "THE JURY VERDICT FINDING DEFENDANT-APPELLANT AARON JONES GUILTY OF AGGRAVATED BURGLARY AND AGGRAVATED ROBBERY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE [citations omitted]."
 {¶ 49} Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. Thompkins, 78 Ohio St.3d at 387. In evaluating whether a verdict is against the manifest weight of the evidence, the reviewing court must examine the entire record and determine whether the trier of fact clearly lost its way in balancing the evidence and judging credibility and thus created a manifest miscarriage of justice. Id. Where the criminal case was tried by a jury, only a unanimous appellate court can reverse on the ground that the verdict was against the manifest weight of the evidence. Id. at 389. This is only done in exceptional circumstances. Id. at 387.
 {¶ 50} The reason for our restraint is that the jury is best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, and gestures of the witnesses testifying before it, including appellant himself. Seasons Coal Co. v.Cleveland (1994), 10 Ohio St.3d 77, 80; DeHass, 10 Ohio St.2d at 231. As such, when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. State v.Gore (1999), 131 Ohio App.3d 197, 201.
 {¶ 51} In urging the victim's testimony was not credible, appellant points to testimony that the victim took Motrin before bed at 7:30 p.m. and that she was groggy. On the other hand, she stated that when she awoke to intruders, she immediately perked up. (Tr. 243-244). Appellant then implies that her dogs should have woken her up before a burglar got to her room if there actually was a burglar. Yet, she pointed out that she is accustomed to her dogs barking at night because her neighbor's son gets in late. (Tr. 233). *Page 12 
 {¶ 52} Appellant also complains that the victim's trial testimony describing the gun was inconsistent with her testimony at the preliminary hearing where she responded to a request to describe the gun by declaring that she could not see the gun while getting punched in the face. (Tr. 249-250). Such fact, even if viewed in the light most favorable to the defense, does not make the victim's entire story incredible. In sum, the victim identified appellant, her former boyfriend of over a year, as the perpetrator of these crimes. The jury had the opportunity to see the victim testify, and they judged her credibility as superior to that of the defense witnesses.
 {¶ 53} As for the defense witnesses, the jury viewed the testimony of two alibi witnesses, appellant's girlfriend and her brother. The jury could have rationally determined that these witnesses were mistaken as to the times or the date, especially since appellant was not arrested until a week after the incident.
 {¶ 54} Finally, the jury viewed appellant take the stand in his own defense. They had the opportunity to view his demeanor, voice inflection, eye movements, gestures and other indicia of veracity. They were in the best position to choose whether the victim or appellant was the truthful witness. Neither story was incredible. Thus, we must uphold the jury's verdict. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 55} Appellant's fourth assignment of error states:
 {¶ 56} "THE TRIAL COURT FAILED TO INSTRUCT THE JURY TO DISREGARD TESTIMONY WHICH WAS THE SUBJECT OF SUSTAINED DEFENSE OBJECTIONS, WHICH RENDERED THE TRIAL FUNDAMENTALLY UNFAIR IN VIOLATION OF THE DUE PROCESS CLAUSE [citations omitted]."
 {¶ 57} Here, appellant urges that the trial court erred by failing to issue curative instructions to disregard the question or the answer each time the defense successfully objected. He states that this error occurred numerous times and that the cumulative effect of the errors deprived him of a fair trial.
 {¶ 58} According to App.R. 16(A)(7), appellant's brief shall include an argument containing the contentions of appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the parts of the record on which appellant relies. See, also, App.R. 16(A)(3) and (6). This division then references division (D) of the same rule, which specifies: *Page 13 
 {¶ 59} "References in the briefs to parts of the record shall be to the pages of the parts of the record involved; e.g., Answer p. 7, Motion for Judgment p. 2, Transcript p. 231. Intelligible abbreviations may be used. If reference is made to evidence, the admissibility of which is in controversy, reference shall be made to the pages of the transcript at which the evidence was identified, offered, and received or rejected."
 {¶ 60} However, appellant fails to cite us to the instances of the alleged errors in the transcript. He does cite to one portion of the transcript as an example, pages 231-232. Yet, there are no objections on those two pages. Along with the fact that each sustained objection is not cited to this court is the fact that there are no separate arguments on each question or partial answer as to the prejudice suffered.
 {¶ 61} According to App.R. 12(A)(2), the appellate court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A). This court has no obligation to scour a transcript looking for any sustained objections and then to evaluate each one for prejudice by concocting individualized potential arguments for each instance spotted.
 {¶ 62} We do note that appellant has attempted to rectify this problem in the reply brief by listing seventeen page numbers to support his contention. However, the reply brief is not the proper place for presenting the crux of the argument to the appellate court. If this were permissible, then the state would not get the chance to respond to the merits of the assignment; rather, the state's brief would merely respond by noting, as we initially did, that appellant failed to cite the court to the alleged errors.
 {¶ 63} Regardless, in many instances, if an objection is lodged prior to the answer, there is no dire need to strike the question. See, e.g. Tr. 225, 267. Moreover, prejudice from a certain question or answer is not automatic merely because an objection was sustained. In fact, the sustained objections this court scanned through were minor items or non-prejudicial revelations. See, e.g. 236 (objection to testimony that co-defendant was in Mahoning County jail, but jury had already heard that co-defendant was "locked up" and that victim testified at co-defendant's preliminary hearing); 324 (where alibi witness stated that appellant told him that he heard the *Page 14 
witness had a child); 334 (speculation as to whether alibi witness's sister would need financial assistance from witness if appellant went to jail).
 {¶ 64} Furthermore, as the state points out, the court issued general curative instructions regarding questions and answers for which objections were sustained. (Tr. 190, 410). That is, the court admonished the jury not to consider such questions or answers and to refrain from speculating about any interrupted answers. We presume the jury followed these instructions. See, e.g., State v. Leonard, 104 Ohio St.3d 54,2004-Ohio-6235, ¶ 157.
 {¶ 65} Additionally, if the defense objects and has its objection sustained but allows the trial to continue without seeking curative instructions for any statements that made it into the record, any error is waived. State v. Davie (1997), 80 Ohio St.3d 311, 322 (failure to request curative instruction waives issue regarding suggestion of bad character and other acts evidence). Thus, the only review is for plain error, which is a wholly discretionary doctrine whereby the appellate court may, but need not, take notice of errors which are obvious and which affect substantial rights that are outcome determinative. See, e.g., Crim.R. 52; State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 62. This elective tool is to be used with the utmost of care by the appellate court in only the most exceptional circumstances where it is necessary to avoid a manifest miscarriage of justice. State v.Hughbanks, 99 Ohio St.3d 365, 2003-Ohio-4121, at ¶ 39. Such circumstances do not exist here.
 {¶ 66} Finally, as we pointed out in assignment of error number one, defense counsel may have tactically decided against specific curative instructions so as to deflect attention from the matter. For all of the above reasons, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER FIVE {¶ 67} Appellant's fifth assignment of error alleges:
 {¶ 68} "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT AARON JONES'S PRO SE MOTION TO DISMISS BASED UPON SPEEDY TRIAL [citations omitted]."
 {¶ 69} A person charged with a felony must be brought to trial within two hundred seventy days of the date of his arrest. R.C. 2945.71(C)(2). Where that person is held in jail in lieu of bail, however, triple time applies. R.C. 2945.71(E). Thus, such person must be brought to trial within ninety days of his arrest. Still, there *Page 15 
are various statutory provisions enumerating certain tolling events. See R.C. 2945.72. We address each relevant provision as it arises in our review of the procedural history of the case.
 {¶ 70} Appellant was arrested for aggravated burglary on January 19, 2006. The day of arrest is not counted. State v. Catlin, 7th Dist. No. 06BE21, 2006-Ohio-6246, ¶ 12-14, citing Crim.R. 45(A) and R.C. 1.14. Thus, the speedy trial time started running on January 20, 2006. Nineteen days elapsed during which the Youngstown Municipal Court conducted an initial appearance, held a preliminary hearing and bound appellant over to the grand jury.
 {¶ 71} On February 8, 2006, appellant filed a request to dismiss his first appointed counsel and to appoint new counsel. This request tolled the speedy trial time. Specifically, the time is tolled by any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law. R.C.2945.72(C).
 {¶ 72} The indictment was filed on February 23, 2006, and new counsel was appointed at the arraignment on March 9, 2006. Appellant does not allege that the delay was occasioned by a lack of diligence in providing substitute counsel. As such, time did not begin running again until March 10, 2006. However, on March 11, 2006, appellant filed a pro se motion to suppress and motion for a discovery pack. Thus, only one day would have elapsed (for a total of twenty days) when time tolled again. The state, however, presumes that the motion was actually filed on March 13 because March 11, 2006 was a Saturday. Thus, they add two days in order to give appellant the benefit of the doubt.
 {¶ 73} More specifically as to appellant's motions, the time is tolled by any period of delay necessitated by motion of defendant. R.C.2945.72(E). As such, a motion to suppress tolls the time. State v.Myers, 97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 44. In fact, even a defendant's motion for discovery tolls the time. State v. Brown,98 Ohio St.3d 121, 2002-Ohio-7040, ¶ 22-23 (time tolled for seven days it took state to respond to request for discovery and bill of particulars).
 {¶ 74} Notably, the state does not have an affirmative duty to show that such a motion diverted the prosecutor's attention or caused a delay in the proceedings before *Page 16 
the time tolls. State v. Sanchez, 110 Ohio St.3d 274, 2006-Ohio-4478, ¶ 25. Rather, it is the filing of the motion itself that tolls the time for a reasonable period of time. Id.
 {¶ 75} Two days after appellant's pro se motion, his new counsel filed his own request for discovery on March 13, 2006. Then, on March 20, 2006, a document was filed showing that discovery was provided to counsel. This ended the tolling provided by the discovery motion.
 {¶ 76} The pro se suppression motion was never ruled upon, likely because it did not mention any seized evidence to suppress but rather seemed to complain about the veracity of the victim. A reasonable time to rule on the motion would be longer than these two weeks; but, since the motion never did get addressed, we shall, for the sake of argument, stop the suppression motion's tolling effect at the March 20, 2006 pretrial when the discovery tolling lifted. In fact, the state believes that defense counsel withdrew the motion to suppress at this pretrial.
 {¶ 77} Time did not begin to run yet because at this pretrial, appellant orally asked to be provided with a transcript of the preliminary hearing. This motion continued the tolling until the transcript was provided. See R.C. 2945.72(E).
 {¶ 78} Another tolling event occurred at the March 20 pretrial when appellant specifically asked to continue the jury trial previously scheduled for March 29, 2006. The court granted appellant's motion to continue and scheduled a new pretrial for April 27, 2006. It is well-established that the speedy trial time is tolled by the period of any continuance granted on the defendant's own motion. R.C 2945.72(H) (time is also tolled by the period of any reasonable continuance granted other than upon the defendant's motion). As such, time was tolled as a result of appellant's own request for a continuance.
 {¶ 79} Appellant filed his pro se speedy trial dismissal motion on May 2, 2006. The state filed a timely response to the motion to dismiss on May 11, 2006. The court denied appellant's motion to dismiss on May 17, 2006. Time was thus also tolled during this time under R.C. 2945.72(E).State v. Broughton (1991), 62 Ohio St.3d 253, 262.
 {¶ 80} Even if for the sake of argument we count the time between April 27 and May 2 (four days) and the time between May 17 and the trial of May 22 (five days) against the state, the grand total of time elapsed would only be twenty-nine days or thirty-one if we add the two days conceded by the state regarding their belief that *Page 17 
documents do not get stamped on Saturdays. This does not violate speedy trial regardless of whether the try-by time is the standard two hundred seventy days or the triple time induced ninety days.[1] Even if we were to find that the delay in appointing new counsel was unreasonable and reduce that tolling event by fourteen days, the count would still be well under ninety days. Giving appellant every benefit of the doubt, his speedy trial rights were not violated. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER SIX {¶ 81} Appellant's final argument deals with sentencing issues. The state does not respond to these issues merely because they are not actually set forth in a separate assignment. However, counsel makes various sentencing arguments at the end of the brief, which should be addressed. (His reply brief attributes the oversight to computer error).
 {¶ 82} First, he complains that a maximum sentence of ten years on each offense to run consecutively for a total of twenty years is excessive and unwarranted. However, the trial court now has full discretion to impose a prison sentence within the statutory range.State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, ¶ 91, 100, 102 (and the court is no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences). We note that appellant's pro se brief agrees that the Foster severance remedy was proper. According to Foster:
 {¶ 83} "Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively." Id. at ¶ 105.
 {¶ 84} The portions unaffected by Foster that must be considered by trial courts sentencing defendants post-Foster include R.C. 2929.11, which details the purposes of sentencing, and R.C. 2929.12, which lists the seriousness and recidivism factors. State v. Mathis,109 Ohio St.3d 61, 2006-Ohio-855, ¶ 38. *Page 18 
 {¶ 85} Counsel's brief claims that the sentence shocks the conscience, is more like a sentence for murder and is disproportionate to the sentences for similar offenders. Yet, appellant has not cited any comparative examples to demonstrate that the sentence was shocking in the sense of being grossly disproportionate to sentences in similar cases.
 {¶ 86} It is true that if a penalty is "so disproportionate to the offense as to shock the moral sense of the community," the sentence can be reversed as violative of the Eighth Amendment. McDougle v.Maxwell (1964), 1 Ohio St.2d 68, 69. However, without something more than counsel's unsupported assertion that the maximum consecutive sentence in this case was shocking and outrageous, the reviewing court will generally uphold the sentence if it falls within the guidelines set by the legislature. State v. Goins, 7th Dist. No. 02CA68,2005-Ohio-1439, ¶ 105. There is no indication of an unconstitutional sentence here, and thus, we cannot say by clear and convincing evidence that the sentence is contrary to law. See R.C. 2953.08(G)(2)(b). See, also, State v. Saxon, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 4, fn.1.
 {¶ 87} As for our remaining review of whether the sentence complied with the relevant law, the trial court stated that it considered the principles and purposes of sentencing under R.C. 2929.11 and balanced the seriousness and recidivism factors under R.C. 2929.12. Specifically, the court found that appellant has a history of criminal offenses, shows no remorse for his actions and committed the worst form of the offense. The court also found that consecutive sentences were necessary to fulfill the purposes of R.C. 2929.11 and were warranted because the act was very violent, he caused great harm and he poses a further danger. This sufficiently establishes consideration of the requisite criteria.
 {¶ 88} Additionally, under the interpretation of the facts as set forth by the state and as found by the jury, the sentencing court could reasonably have concluded that appellant's crimes were more extreme than the basic elements of aggravated robbery and aggravated burglary. That is, the crime was committed at night when the victim was likely to be sleeping. Appellant utilized a key that he refused to return to the victim. They had dated for one and one half years but had broken up six months prior. There was no attempt to commit the burglary without detection. Rather, the victim was purposely woken up and beaten. *Page 19 
 {¶ 89} Moreover, the victim was threatened multiple times in order to scare her from reporting the crime. She was grabbed by the hair and punched in the face multiple times. Her room was ransacked. Her prescription pain pills and $800 were stolen. The motive was more than theft as can be seen from the violence and the failure to care that she could identify the perpetrator.
 {¶ 90} The victim's face was very battered due to the assault. Her nose was bleeding so profusely and was so swollen that the emergency room doctor originally diagnosed her with a fractured nose. The victim had a bad back and asthma, which were exacerbated by the attack; as the former boyfriend, appellant could be expected to know of the existence of her conditions.
 {¶ 91} Furthermore, contrary to appellant's pro se contention, he does have prior convictions including: two 1996 convictions for carrying a concealed weapon and possession of a dangerous ordnance; two 2000 convictions for aggravated menacing and possession of a dangerous ordnance; a 2006 conviction of disorderly conduct; and, multiple driving under suspension convictions. (P.S.I.; Tr. 355).
 {¶ 92} Moreover, a sentencing court may consider the existence of other prior charges and arrests even if the defendant has been acquitted on those charges or those charges have been dismissed prior to trial.State v. Wiles (1991), 59 Ohio St.3d 71, 78. Thus, the court was permitted to consider, for instance, the original charge of felonious assault, appellant's use of a gun which formed the basis for the original firearm specifications and his prior arrests.
 {¶ 93} Additionally, there are issues regarding appellant's honesty. Although appellant has eleven children, he does not pay any child support. He testified that at the time of arrest, he was working full-time with overtime at a toy factory. Yet, he was also receiving Social Security benefits of $500 per month. (Tr. 348). Finally, since appellant testified, the court can consider his untruthful (as found by the jury) testimony as evidence of his lack of credibility and lack of remorse.
 {¶ 94} For all of the foregoing reasons, we conclude that we have not been presented with clear and convincing evidence that appellant's sentence was contrary to law. Nor can we say that the trial court erred in finding that the circumstances of appellant's offenses warranted maximum, consecutive sentences. See Foster, 109 Ohio St.3d 1 at ¶ 91, 100, 102 (full discretion); R.C. 2953.08(G)(2)(b) (clear and *Page 20 
convincing evidence sentence is contrary to law); State v. Windham, 9th Dist. No. 05CA0033, 2006-Ohio-1544, ¶ 11-12 (abuse of discretion).
 {¶ 95} Lastly, appellant argues that aggravated burglary and aggravated robbery are allied offenses of similar import. Thus, he concludes that the imposition of consecutive sentences was erroneous. However, he failed to raise this argument below. Regardless, his argument is incorrect.
 {¶ 96} If the elements of the offenses "correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import." State v.Jones (1997), 78 Ohio St.3d 12, 13. If, on the other hand, the elements do not correspond, the offenses are of dissimilar import, the court's inquiry ends, and thus multiple convictions and sentences are permitted. R.C. 2941.25(B). When comparing the elements of the two offenses, those elements must be compared in the abstract without regard to the particular facts alleged. State v. Rance (1999), 85 Ohio St.3d 632, 637. Notably, even in the case of allied offenses of similar import, the offender can still be convicted of both offenses if they were committed separately or with separate animus. Jones, 78 Ohio St.3d at 14; R.C.2941.25(B).
 {¶ 97} It is well-established that aggravated burglary and aggravated robbery are not allied offenses of similar import and are committed with separate animus. State v. Ketterer, 111 Ohio St.3d 70, 2005-Ohio-5283, ¶ 119-120; State v. Monroe, 105Ohio St.3d 384, 2005-Ohio-225, ¶ 68. That is, aggravated burglary is complete when the offender trespasses in an occupied structure with intent to commit an offense such as theft.State v. Frazier (1978), 58 Ohio St.3d 253, 256. For purposes of the aggravated burglary conviction, it is irrelevant whether the offender actually completes the theft. Id. The subsequent actual completion of the theft by way of aggravated robbery is an independent and distinct offense committed separately. Id.
 {¶ 98} As such, appellant's argument is without merit. The court was permitted to sentence him for both aggravated burglary and aggravated robbery and to run those sentences consecutively.
 REMAINING ISSUES {¶ 99} Since appellant filed a pro se brief, there are some remaining issues that did not fit within any of the issues discussed above. First, appellant alleges a conspiracy by the prosecutor and the judge due to his complaints about the jail. *Page 21 
Second, he complains that the judge played computer solitaire during his trial. However, these allegations concern facts outside the record. Thus, they are not the proper topic for direct appeal.
 {¶ 100} Appellant also argues that it was a violation of Evid.R. 404(B)'s prohibition against other acts to allow a crime appellant committed twelve years prior to be used at trial. However, this ignores Evid.R. 609, which allows evidence of a crime to be used against the testifying defendant if punishable by more than one year and if he terminated probation for the offense within the past ten years. It was stated on the record that probation on his offenses ended within the past ten years. In line with the rule, counsel did not object to the presentation of the crime below, but rather, he introduced ithimself before the state could. For these reasons, this argument is without merit.
 {¶ 101} Lastly, appellant mentions that he should have been produced for the suppression hearing to determine the constitutionality of the seizure of evidence. However, there is no indication that a suppression hearing was held in this case. As aforementioned, his pro se suppression motion did not actually raise suppression issues regarding evidence seized from the defendant. This argument is moot.
 {¶ 102} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs.
Waite, J., concurs.
[1] We note that in his May 2 dismissal motion, appellant himself makes references to probation being revoked in Boardman, which leads to an implication that he may have been held on a probation holder for part of his jail time, thus eliminating triple time for any such period. However, due to the lack of dates or the state's elucidation on this matter, we shall maintain our triple time calculation in favor of appellant. *Page 1