[Cite as *In re Z.S.*, 2023-Ohio-688.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

|  |  |  |  |  |
|---|---|---|---|---|
| IN THE MATTER OF: | : | | | |
| | | : | CASE | |
| | | NO. 22CA12 | | |
| | | Z.S., | | |
| | | 22CA13 | | |
| | : | | | |
| Alleged Dependent | | | | |
| Child.[1] | | : | DECISION | |
| | | & JUDGMENT ENTRY | | |
| | : | | | |

_____

APPEARANCES:

Steven H. Eckstein, Washington Court House, Ohio, for Appellant
Mother.

Autumn D. Adams, Toledo, Ohio, for Appellant Father.

Justin Lovett, Jackson County Prosecuting Attorney, and William
L. Archer, Jr., Assistant Jackson County Prosecuting Attorney,
Portsmouth, Ohio, for Appellee.
_____
CIVIL CASE FROM COMMON PLEAS COURT, JUVENILE DIVISION
DATE JOURNALIZED:3-1-23
ABELE, J.

{¶1} This is a consolidated appeal from a Jackson County

Common Pleas Court, Juvenile Division, judgment that granted

Jackson County Job and Family Services, appellee herein,

permanent custody of two-year-old Z.S.

---

[1] This opinion uses the caption that appears on the trial court's
judgment that granted appellee permanent custody of the child.

{¶2} The child's biological mother assigns the following error for review:

"THE TRIAL COURT'S GRANT OF PERMANENT
CUSTODY TO THE JACKSON COUNTY JOBS AND
FAMILY SERVICES CHILDREN'S DIVISION WAS
AGAINST THE MANIFEST WEIGHT OF THE
EVIDENCE."

{¶3} The child's biological father also raises the following assignment of error:

"THE TRIAL COURT ABUSED ITS DISCRETION WHEN
IT GRANTED PERMANENT CUSTODY [OF] ZS TO
CHILD PROTECTIVE SERVICES BECAUSE THE
APPOINTED GUARDIAN AD LITEM FAILED TO
CONDUCT AN INDEPENDENT INVESTIGATION AS TO
THE BEST INTERESTS OF ZS."

{¶4} On October 13, 2020, appellee filed a complaint that alleged the then 11-month-old child to be neglected and dependent.  The complaint asserted that the child had been exposed to domestic violence and the parents did not comply with safety plans.  Appellee requested temporary custody and separately asked for emergency temporary custody, which the court granted.

{¶5} On January 8, 2021, the trial court adjudicated the child dependent and later entered a dispositional order that continued the child in appellee's temporary custody.

{¶6} On March 10, 2022, appellee filed a motion for permanent custody and alleged that the child has been in its

temporary custody for 12 or more months out of a consecutive 22-month period and that placing the child in its permanent custody is in the child's best interest.  The motion alleged that (1) the father currently is incarcerated with a November 15, 2023 scheduled release date, and (2) the mother did not complete her case plan goals, is on probation, and has a warrant for her arrest in Tennessee.

{¶7}  On June 30, 2022, the trial court held a permanent custody hearing.  At the hearing, caseworker Kristin Butts characterized mother's progress throughout the case as regressive.  She explained that mother might make some progress, but eventually slipped back into using drugs or otherwise engaged in illicit conduct that led to multiple arrests throughout the pendency of the case.  Butts stated that mother most recently had been terminated from a program in February 2022 and in June 2022, she was arrested.  At the time of the hearing, the mother was in jail.

{¶8}  Caseworker Butts stated she did not meet the father because he is in prison and his expected release date is in November 2023.  Butts indicated that the child is with a foster family, doing well in the family's home and the foster family is interested in adoption.

{¶9}  The child's guardian ad litem (GAL) also testified and

recommended the court grant the agency permanent custody of the child. The GAL stated that the child is too young to understand the nature of the proceedings, but the GAL observed that the child is "very bonded with her foster parents" and is "well adjusted." The GAL explained that she had been in contact with the foster family at various times throughout the case. When she tried to contact the family before she prepared her final report, however, she could not reach them. The GAL indicated that due to an internal error, the agency caseworker had not given her the family's current phone number, but instead gave her the family's old phone number. Thus, she could not reach the foster parents before she submitted her final report. However, the GAL stated she had been in touch with the foster parents at other points throughout the case.

{¶10} On July 26, 2022, the trial court granted appellee permanent custody of the child. The court found that (1) the child has been in appellee's temporary custody for 12 or more months of a consecutive 22-month period, (2) placing the child in appellee's permanent custody is in her best interest, and (3) the father "has utterly failed to comply with the case plan," is in prison until November 15, 2023, and failed to maintain contact with the child or appellee even when he was not in prison. The court further noted that mother has a substance-

abuse problem and continued to test positive throughout the pendency of the case.  The court additionally recognized that the parents have unresolved issues with domestic violence and mother currently is incarcerated for violating probation.  The court found that "[a]ccording to the GAL, the foster caregivers have a good relationship with the child and have an interest in adopting the child should permanent custody be granted to JFS."  The court further determined that (1) the child is too young to express her wishes, (2) the parties did not dispute that the child has been in the agency's temporary custody for 12 or more months of a consecutive 22-month period, and (3) the child needs a legally secure permanent placement that cannot be achieved without a grant of permanent custody to appellee.  The court stated that "the parents are not in a position to receive custody" and "drug abuse, various incarcerations and domestic violence" show they cannot provide the child with a legally secure permanent placement.  The court thus granted appellee permanent custody of the child.  This appeal followed.

I

MOTHER'S APPEAL

{¶11} In her sole assignment of error, mother asserts that the trial court's judgment is against the manifest weight of the evidence.  In particular, she argues that clear and convincing

evidence does not support the trial court's finding that the foster parents have a good relationship with the child and that they are interested in adopting the child.  Because, as mother points out, the GAL stated at the permanent custody hearing that she could not reach the foster parents before she submitted her final report, the GAL lacked any factual basis to support her assertion that the foster parents share a positive relationship with the child.

{¶12} Appellee, however, asserts that it presented ample clear and convincing evidence to support the trial court's judgment.  Appellee argues that the evidence presented at the hearing shows, inter alia, that (1) father is in jail with a November 2023 expected release date, (2) mother was in prison at the time of the hearing and had other periods of incarceration throughout the pendency of the case, (3) mother recently was charged with drug possession, and (4) the mother did not complete any of the numerous treatment programs that she had attempted to complete.  Appellee also points out that the GAL clarified during her testimony that she had been in contact with the foster parents at various points throughout the pendency of the case, but had been unable to reach them before she submitted her final report due to miscommunication.  Appellee further contends that any error that might exist would be harmless in

light of the other overwhelming evidence that supports the trial

court's decision.

A

{¶13} Generally, a reviewing court will not disturb a trial

court's permanent custody decision unless the decision is

against the manifest weight of the evidence. *E.g., In re B.E.*,

4th Dist. Highland No. 13CA26, 2014-Ohio-3178, ¶ 27; *In re R.S.*,

4th Dist. Highland No. 13CA22, 2013-Ohio-5569, ¶ 29.

> "Weight of the evidence concerns 'the inclination of the
> greater amount of credible evidence, offered in a trial,
> to support one side of the issue rather than the other.
> It indicates clearly to the jury that the party having
> the burden of proof will be entitled to their verdict,
> if, on weighing the evidence in their minds, they shall
> find the greater amount of credible evidence sustains
> the issue which is to be established before them. Weight
> is not a question of mathematics, but depends on its
> effect in inducing belief.'"

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972

N.E.2d 517, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380,

387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594

(6th Ed.1990).

{¶14} When an appellate court reviews whether a trial

court's permanent custody decision is against the manifest

weight of the evidence, the court "'"weighs the evidence and all

reasonable inferences, considers the credibility of witnesses

and determines whether in resolving conflicts in the evidence,

the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."'" *Eastley* at ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord In re Pittman*, 9th Dist. Summit No. 20894, 2002-Ohio-2208, ¶¶ 23-24. We further observe, however, that issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984):

> The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.

**{¶15}** Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well (Emphasis sic)." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). *Accord In re Christian*, 4th Dist. No. 04CA 10, 2004-Ohio-3146, ¶ 7.

{¶16} The question that an appellate court must resolve when reviewing a permanent custody decision under the manifest weight of the evidence standard is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43.  "Clear and convincing evidence" is:

> the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.  It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases.  It does not mean clear and unequivocal.

*In re Estate of Haynes*, 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23 (1986).  In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof."  *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *accord In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof."); *In re Adoption of Lay*, 25 Ohio St.3d 41, 42-43, 495

N.E.2d 9 (1986).  *Cf. In re Adoption of Masa*, 23 Ohio St.3d 163,

165, 492 N.E.2d 140 (1986) (whether a fact has been "proven by

clear and convincing evidence in a particular case is a

determination for the [trial] court and will not be disturbed on

appeal unless such determination is against the manifest weight

of the evidence").

{¶17} Thus, if a children services agency presented

competent and credible evidence upon which the trier of fact

reasonably could have formed a firm belief that permanent

custody is warranted, the court's decision is not against the

manifest weight of the evidence.  *In re R.M.*, 2013-Ohio-3588,

997 N.E.2d 169, ¶ 62 (4th Dist.); *In re R.L.*, 2nd Dist. Greene

Nos. 2012CA32 and 2012CA33, 2012-Ohio-6049, ¶ 17, quoting *In re

A.U.*, 2nd Dist. Montgomery No. 22287, 2008-Ohio-187, ¶ 9 ("A

reviewing court will not overturn a court's grant of permanent

custody to the state as being contrary to the manifest weight of

the evidence 'if the record contains competent, credible

evidence by which the court could have formed a firm belief or

conviction that the essential statutory elements * * * have been

established.'").

{¶18} Once a reviewing court finishes its examination, the

judgment may be reversed only if it appears that the fact-

finder, when resolving the conflicts in evidence, "'clearly lost

its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the [decision].'" *Id.*, quoting *Martin*, 20 Ohio App.3d at 175; *accord State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

B

**{¶19}** We recognize that "parents' interest in the care, custody, and control of their children 'is perhaps the oldest of the fundamental liberty interests recognized by th[e United States Supreme] Court.'" *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 19, quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Indeed, the right to raise one's "child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990); *accord In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997); *see Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("natural parents have a fundamental right to the care and custody of their children"). Thus,

"parents who are 'suitable' have a 'paramount' right to the custody of their children." *B.C.* at ¶ 19, quoting *In re Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977), citing *Clark v. Bayer*, 32 Ohio St. 299, 310 (1877); *Murray*, 52 Ohio St.3d at 157, 556 N.E.2d 1169.

**{¶20}** A parent's rights, however, are not absolute. *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 11. Rather, "'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla. App. 1974). Thus, the State may terminate parental rights when a child's best interest demands such termination. *D.A.* at ¶ 11.

**{¶21}** Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. *Id.* Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying purposes of R.C. Chapter 2151: "to care

for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.'" *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 29, quoting R.C. 2151.01(A).

C

**{¶22}** A children services agency may obtain permanent custody of a child by (1) requesting it in the abuse, neglect or dependency complaint under R.C. 2151.353, or (2) filing a motion under R.C. 2151.413 after obtaining temporary custody.  In this case, appellee sought permanent custody by filing a motion under R.C. 2151.413.  When an agency files a permanent custody motion under R.C. 2151.413, R.C. 2151.414 applies.  R.C. 2151.414(A).

**{¶23}** R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that one of the following conditions applies:

> (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> (b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶24} Thus, before a trial court may award a children services agency permanent custody, it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies, and (2) that awarding the children services agency permanent custody would further the child's best interest.

{¶25} In the case at bar, the trial court found that the child had been in the agency's temporary custody for more than 12 months of a consecutive 22-month period, and thus, that R.C. 2151.414(B)(1)(d) applies.  The mother does not challenge this finding.

{¶26} R.C. 2151.414(D) directs a trial court to consider "all relevant factors," as well as specific factors, to determine whether a child's best interest will be served by granting a children services agency permanent custody.  The listed factors include:  (1) the child's interaction and interrelationship with the child's parents, siblings, relatives,

foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶27} Courts that are determining whether a grant of permanent custody to a children services agency will promote a child's best interest must consider "all relevant [best interest] factors," as well as the "five enumerated statutory factors." *C.F.* at ¶ 57, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56; *accord In re C.G.*, 9th Dist. Summit Nos. 24097 and Summit Nos. 24099, 2008-Ohio-3773, ¶ 28; *In re N.W.*, 10th Dist. Franklin Nos. 07AP-590 and Franklin Nos. 07AP-591, 2008-Ohio-297, ¶ 19. However, none of the best interest factors are entitled to "greater weight or heightened significance." *C.F.* at ¶ 57. Instead, the trial court considers the totality of the circumstances when making its best interest determination. *In re K.M.S.*, 3rd Dist. Marion Nos. 9-15-37, 9-15-38, and Marion Nos. 9-15-39, 2017-Ohio-142, ¶

24; *In re A.C.*, 9th Dist. Summit No. 27328, 2014-Ohio-4918, ¶ 46.  In general, "[a] child's best interest is served by placing the child in a permanent situation that fosters growth, stability, and security."  *In re C.B.C.*, 4th Dist. Lawrence Nos. 15CA18 and 15CA19, 2016-Ohio-916, ¶ 66, citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991).

D

**{¶28}** In the case sub judice, appellant disputes the trial court's factual finding that the GAL stated that "the foster caregivers have a good relationship with the child and have an interest in adopting the child should permanent custody be granted to [appellee]."  She alleges that the trial court's factual finding lacks support.  Appellant notes that the GAL stated that she could not contact the foster parents before she submitted her final report to the court.  Appellant thus surmises that the GAL's inability to contact the foster parents before she submitted her final report establishes that the GAL could not have known that the foster family shared a positive relationship with the child.  She likewise theorizes that because appellee gave the GAL the incorrect phone number, appellee also lacked any basis to suggest that the foster family shares a positive relationship with the child.

**{¶29}** After our review, we do not find merit to appellant's

argument.  First, the GAL stated at the hearing that she had

been in touch with the foster family at various points

throughout the case.  She explained that when she attempted to

contact the family before she submitted her final report, she

could not reach them because appellee apparently gave her the

wrong phone number.  Thus, contrary to appellant's assertion,

the record does not demonstrate that the GAL failed to contact

the foster family or failed to ascertain the family's

suitability to serve as the child's caregivers.  Instead, the

GAL had done so at previous times throughout the case.

Moreover, the caseworker testified that the child has a positive

relationship with the foster family and that the foster family

intends to adopt the child if given the opportunity.  We

therefore disagree with appellant that the trial court's

findings that the child shares a positive relationship with the

foster family and that the family intends to adopt the child if

the court grants the agency permanent custody are against the

manifest weight of the evidence.

{¶30} Because appellant does not specifically challenge the

trial court's findings regarding the other best-interest

factors, we will not include an extended analysis of those

factors.  Instead, we simply note that the record contains ample

clear and convincing evidence to support the trial court's

decision to place the child in appellee's permanent custody.

{¶31} Accordingly, based upon the foregoing reasons, we overrule the mother's sole assignment of error.


II

FATHER'S APPEAL

{¶32} In his sole assignment of error, father asserts that the trial court abused its discretion by granting appellee's request for permanent custody when the GAL did not comply with Sup.R. 48.03.  The father contends that the GAL did not independently investigate the child's best interest, but instead relied upon the caseworkers' reports.  He also points out that the GAL testified at the permanent custody hearing, she last had contact with the child more than four months before the hearing. The father further notes the GAL admitted she did not contact the father even though she knew where to locate him (in prison).

{¶33} We initially observe that, during the trial court proceedings, the father did not assert that the GAL's report failed to comply with Sup.R. 48.06.[2]  It is well-settled that a

---

[2] Sup.R. 48.06 provides, in relevant part, as follows:

> (A) General Report Requirements.
> (1) A guardian ad litem shall prepare a written final report, including recommendations to the court, within the times set forth in this division. The report

shall affirmatively state that responsibilities have been met and shall detail the activities performed, hearings attended, persons interviewed, documents reviewed, experts consulted, and all other relevant information considered by the guardian ad litem in reaching the recommendations and in accomplishing the duties required by statute, by court rule, and in the order of appointment from the court.

(2) All reports shall include the following warning: "The guardian ad litem report shall be provided to the court, unrepresented parties, and legal counsel. Any other disclosure of the report must be approved in advance by the court. Unauthorized disclosure of the report may be subject to court action, including the penalties for contempt, which include fine and/or incarceration."

(3) Oral and written reports shall address relevant issues, but shall not be considered determinative.

(4) A guardian ad litem shall be available to testify at any relevant hearing and may orally supplement the report at the conclusion of the hearing.

(5) A guardian ad litem may provide an interim written or oral report at any time.

(B) Guardian Ad Litem Reports in Abuse, Neglect, Dependency, Unruly, and Delinquency Reports.

(1) A guardian ad litem in abuse, neglect, dependency, unruly, and delinquency cases and actions to terminate parental rights shall provide a written report to the court, unrepresented parties, and legal counsel not less than seven days prior to any initial dispositional hearing, permanent custody hearing, and any hearing upon a motion requesting a change in disposition. The court may alter the seven-day period as may be necessary for the administration of justice.

(2) A court shall review all guardian ad litem reports, written or oral, to ensure that the guardian ad litem has performed those responsibilities required by R.C. 2151.281.

R.C. 2151.281(I) states as follows:

The guardian ad litem for an alleged or adjudicated abused, neglected, or dependent child shall perform whatever functions are necessary to protect the best

party may not raise new issues or legal theories for the first time on appeal. *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975). Thus, a litigant who fails to raise an argument before the trial court forfeits the right to raise that issue on appeal. *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 30 ("an appellant generally may not raise an argument on appeal that the appellant has not raised in the lower courts"); *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 21 (defendant forfeited constitutional challenge by failing to raise it during trial court proceedings); *Gibson v. Meadow Gold Dairy*, 88 Ohio St.3d 201, 204, 724 N.E.2d 787 (2000) (party waived arguments for purposes of appeal when party failed to raise those arguments during trial court proceedings); *State ex rel. Gutierrez v. Trumbull Cty. Bd. of Elections*, 65 Ohio St.3d 175, 177, 602 N.E.2d 622 (1992) (appellant cannot "present * * * new arguments for the first time on appeal"); *accord State ex rel. Jeffers v.*

---

interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child by the public children services agency or private child placing agency that has temporary or permanent custody of the child, and shall file any motions and other court papers that are in the best interest of the child in accordance with rules adopted by the supreme court.

*Athens Cty. Commrs.*, 4th Dist. Athens No. 15CA27, 2016-Ohio-8119, fn.3 ("[i]t is well-settled that failure to raise an argument in the trial court results in waiver of the argument for purposes of appeal"); *State v. Anderson*, 4th Dist. Washington No. 15CA28, 2016-Ohio-2704, ¶ 24 ("arguments not presented in the trial court are deemed to be waived and may not be raised for the first time on appeal").

**{¶34}** Appellate courts may, however, in certain circumstances, consider a forfeited argument using a plain-error analysis. *See Risner v. Ohio Dept. of Nat. Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 27 (reviewing court has discretion to consider forfeited constitutional challenges); *see also Hill v. Urbana*, 79 Ohio St.3d 130, 133-34, 679 N.E.2d 1109 (1997), citing *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus ("[e]ven where [forfeiture] is clear, [appellate] court[s] reserve[] the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it'"); *State v. Pyles*, 7th Dist. Mahoning No. 13-MA-22, 2015-Ohio-5594, ¶ 82, quoting *State v. Jones*, 7th Dist. No. 06-MA-109, 2008-Ohio-1541, ¶ 65 (the plain error doctrine "'is a wholly discretionary doctrine'"); *DeVan v. Cuyahoga Cty. Bd. of Revision*, 8th Dist. Cuyahoga,

2015-Ohio-4279, 45 N.E.3d 661, ¶ 9 (appellate court retains discretion to consider forfeited argument); *see Rosales-Mireles v. United States*, ___ U.S. ___, 138 S.Ct. 1897, 1904, 201 L.Ed.2d 376 (2018) (court has discretion whether to recognize plain error).

**{¶35}** For the plain error doctrine to apply, the party claiming error must establish (1) that "'an error, i.e., a deviation from a legal rule" occurred, (2) that the error was "'an "obvious" defect in the trial proceedings,'" and (3) that this obvious error affected substantial rights, i.e., the error "'must have affected the outcome of the trial.'" *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d 1001, 1003 (1982) ("A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings."). For an error to be "plain" or "obvious," the error must be plain "under current law" "at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 467, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *accord Barnes*, 94 Ohio St.3d at 27; *State v. G.C.*, 10th Dist. Franklin

No. 15AP-536, 2016-Ohio-717, ¶ 14.

**{¶36}** The plain error doctrine is not, however, readily invoked in civil cases. Instead, an appellate court "must proceed with the utmost caution" when applying the plain error doctrine in civil cases. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). The Ohio Supreme Court has set a "very high standard" for invoking the plain error doctrine in a civil case. *Perez v. Falls Financial, Inc.*, 87 Ohio St.3d 371, 721 N.E.2d 47 (2000). Thus, "the doctrine is sharply limited to the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss*, 79 Ohio St.3d at 122, 679 N.E.2d 1099; *accord Jones v. Cleveland Clinic Found.*, 161 Ohio St.3d 337, 2020-Ohio-3780, 163 N.E.3d 501, ¶ 24; *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶ 43. Moreover, appellate courts "'should be hesitant to decide [forfeited errors] for the reason that justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination.'" *Risner* at ¶ 28, quoting *Sizemore v. Smith*, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), fn. 2;

*accord Mark v. Mellott Mfg. Co., Inc.*, 106 Ohio App.3d 571, 589, 666 N.E.2d 631 (4th Dist.1995) ("Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process."). Additionally, "[t]he plain error doctrine should never be applied to reverse a civil judgment * * * to allow litigation of issues which could easily have been raised and determined in the initial trial." *Goldfuss*, 79 Ohio St.3d at 122.

**{¶37}** In the case sub judice, the father did not argue that the trial court obviously erred by considering the GAL's recommendation.  We further point out that this court, along with other Ohio appellate courts, has refused to recognize purported superintendence rule violations as reversible error. *E.g., In re A.P.*, 4th Dist. Gallia No. 21CA14, 2022-Ohio-1577, ¶ 46; *In re K.L.*, 11th Dist. Portage No. 2021-P-0022, 2021-Ohio-3080, ¶ 63 ("the failure to comply with the Rules of Superintendence, even if a technical error, is not reversible"); *In re E.W.*, 4th Dist. Washington No. 10CA18, 2011-Ohio-2123, ¶ 12 (superintendence rules are internal housekeeping rules that do not create any substantive rights); *Pettit v. Pettit*, 12th Dist. Fayette No. CA2011-08-018, 2012-Ohio-1801, ¶ 12 (superintendence rules are "administrative directives only, and are not intended to function as rules of practice and

procedure"); *accord Gupta v. Sharan*, 10th Dist. Franklin No.

22AP-81, 2022-Ohio-4479, ¶ 44; *State v. Clark*, 9th Dist. Medina

No. 20CA0020-M, 2021-Ohio-3397, ¶ 39; *State v. Klayman*, 4th

Dist. Hocking No. 17CA13, 2018-Ohio-3580, ¶ 17; *see State ex

rel. Parker Bey v. Byrd*, 160 Ohio St.3d 141, 2020-Ohio-2766, 154

N.E.3d 57, ¶ 41, quoting *Singer*, 50 Ohio St.2d at 110 ("'[t]he

Rules of Superintendence are not designed to alter basic

substantive rights'") (Kennedy, J., concurring in part and

dissenting in part).

**{¶38}** Moreover, the father has not shown that the result of

the trial court proceedings would have been different if the GAL

had conducted additional investigation.  The father did not

argue, for example, that if the GAL met with the child shortly

before the permanent custody hearing, or had contacted the

father during his incarceration, the trial court would have

rejected appellee's permanent custody motion and would have

granted the parents additional time to demonstrate that one of

them would be able to provide the child with proper care.  As

the GAL and agency caseworkers stated at the permanent custody

hearing, the father remains incarcerated until his possible

release in November 2023.  Also, the mother has been unable to

successfully complete any of the multiple drug treatment

programs that she has entered throughout the pendency of the

case, and at the time of the permanent custody hearing, she was in jail.  Nothing in the record suggests that any additional investigation that the GAL might have been able to conduct would change these facts.  Consequently, we do not believe that the father can establish that the trial court plainly erred by considering the GAL's report.

**{¶39}** Accordingly, based upon the foregoing reasons, we overrule the parties' assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the appeal be affirmed and that appellee recover of appellants the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.